[L. A. No. 25375.   In Bank.   July 8, 1960.]

HARVEY MACHINE COMPANY, INC. (a Corporation) et al., Respondents, v. HATZEL AND BUEHLER, INC. (a Corporation) et al., Appellants.

Crider, Tilson & Ruppée, Garvin F. Shallenberger and Abe Mutchnik for Appellants.

Ball, Hunt & Hart and Clark R. Heggeness for Respondents.

WHITE, J.—The defendants, construction contractors, appeal from a judgment declaring that they are obligated to indemnify the plaintiffs by virtue of a hold harmless and indemnification clause contained in an agreement whereby the defendants, with other contractors, undertook to construct a new industrial plant in its entirety for the plaintiff Harvey Machine Company, Inc. The plaintiff Pacific Indemnity Company is Harvey's insurer against "liability imposed by law."

The cause as framed by the pleadings was submitted to the trial court on an agreed statement of facts. It appears therefrom that, pursuant to the terms of a written agreement, the defendants undertook to make certain electrical installations in Harvey's plant then under construction. While the defendants and other construction contractors were thus engaged, Sam Mann, an employee of the defendants while engaged in his duties on the premises, fell into an open elevator pit. The pit and elevator comprised a part of the overall installation on which Mann was employed. He sustained injuries for which he recovered a workmen's compensation award pursuant to his status as an employee of the defendants. He thereafter commenced an action against Harvey as an alleged tort feasor, in which he seeks to recover $75,000 general damages and other unspecified sums for loss of earnings and medical expenses incurred as a result of his fall.

Harvey, upon commencement of the action by Mann, made demand on the defendants to defend the action under the aforesaid hold harmless and indemnity provisions of the agreement. The defendants refused on the ground, apparently, that those provisions do not provide protection for the indemnitee against its own acts of negligence. This action in declaratory relief was then commenced for a declaration that the defendants are required to indemnify and hold the plaintiffs harmless from Mann's claims. By its judgment the trial court declared that the defendants were "to pay any and all costs and expenses of" Harvey in the Mann action, "and any judgment that may be rendered against" Harvey in that action. It may

be assumed for purposes of this proceeding that Mann's fall into the pit was a consequence of some breach of duty owed to Mann on the part of Harvey.

The particular provisions of the agreement with which we are concerned read as follows:

"ACCIDENT PREVENTION:

"(a) In order to provide safety controls for protection to the life and health of employees and other persons; for prevention of damage to property, materials, supplies and equipment; and for avoidance of work interruptions in the performance of this contract; the . . . [defendants] shall comply with all pertinent provisions and Safety Requirements of Federal and State Laws building codes and regulations in effect during the course of the work, and will also take or cause to be taken such additional measures as . . . [Harvey] may determine to be reasonably necessary for the purpose.

"(b) [Defendants agree] . . . to indemnify and hold harmless Harvey Machine Co., Inc., and its officers and employees, against liability, including all costs and expenses, for bodily or personal injuries including death at any time resulting therefrom, sustained by any person or persons including employees of . . . [defendants], and arising from the use of the premises, facilities or services of Harvey Machine Co., Inc., its officers or employees.

"(c) Compliance with the provisions of this Article by Subcontractors will be the responsibility of the . . . [defendants].

"INSURANCE:

"[Defendants] . . . shall obtain at . . . [their] own expense adequate Workmen's Compensation Insurance, Contractor's Public Liability Insurance, and Automobile Liability Insurance, and have satisfactory proof of same on file with Harvey Machine Co., Inc."

The question in the present case, as in *Vinnell Co.* v. *Pacific Elec. Ry. Co.*, 52 Cal.2d 411 [340 P.2d 604], is whether such an indemnity clause operates to exculpate the indemnitee from the consequences of its own breach of duty where the clause does not expressly state that the damage so caused is intended to be included in the coverage of the clause. The question is one of interpretation of contracts. If it can be determined that the parties intended by their agreement to protect the indemnitee against claims of damage caused by any or even all types of negligent conduct on its part, such an agreement would effectively accomplish that purpose. (*City of*

*Oakland* v. *Oakland etc. School District,* 141 Cal.App.2d 733, 738 [297 P.2d 752] ; anno., 175 A.L.R. 8, 144-149.)

In the Vinnell case it was held that the agreement therein could not be construed to provide that the parties intended to protect the indemnitee against its affirmative acts of negligence, where such protection was not expressly provided. In that case a railroad granted permission to a construction contractor to build a drain ditch across the railroad's yard, and exacted an indemnification provision in return. While the ditch was under construction the railroad continued to operate in the yard, and negligently switched a string of its cars into an excavation. Significant factual differences exist in the present case. Here the indemnitee did not continue to maintain independent operations on the premises whereon construction was in progress. The injuries did not result from some conduct or omission unrelated to the indemnitors' performance. Most significantly of all, the claimed breach of duty on the indemnitee's part was not active, affirmative misconduct, but at most passive negligence—a failure to act in fulfillment of a duty of care which devolved upon the indemnitee as the owner or occupier of land. Finally, the misconduct does not relate to some matter over which the indemnitee exercised exclusive control. In the Vinnell case the negligent switching of the engine and cars was not only within the indemnitee's exclusive control, but was also an act unrelated to the indemnitor's performance. In the present case the elevator pit was a part of the structure connected with the indemnitors' performance; and the indemnitors undertook at least some responsibility for making their employee's environment a safe place to work when they agreed, as stated, "to comply with all pertinent provisions and Safety requirements of Federal and State Laws building codes and regulations. . . ."

The situation here presented, where Harvey contracted for the complete construction of its plant and exacted from the defendants, and through them, from the subcontractors, hold harmless and indemnification clauses in the case of injuries to the defendants' employees, requires a realistic conclusion that the parties knowingly bargained for the very protection here in issue. Where, as in the case at bar, the contractors had practical control of the structures on the premises, any negligence for the condition of the structures would obviously not be that of the owner alone. The accident, in these circumstances, was one of the risks, if not the most obvious risk, against which Harvey sought to be covered. This

realistic approach cannot be sacrificed to the formalism of rules of construction where the circumstances are inconsistent with the need of an application of such rules in order to determine the parties' intentions. Accordingly it must be concluded that the injuries to Mann which resulted from the condition of the premises during construction must be deemed to be within the contemplation of the parties when it was agreed that Harvey was to be held harmless "against liability . . . for bodily or personal injuries . . . sustained by any person or persons including employees of [defendants], and arising from the use of the premises, facilities or services of Harvey."

In view of the distinctions hereinbefore drawn, the present decision is not inconsistent with the views expressed in the opinion in the Vinnell case, *supra*. As noted particularly, the conduct there involved an affirmative, unrelated act of negligence on the part of the indemnitee. It was stated therein, and the decision turned on the holding, that "courts have consistently adopted the position that indemnification claims are to be strictly construed against the indemnitee in cases involving affirmative acts of negligence on his part. (Citations.)" Throughout the opinion, however, it is manifest that it is the intent of the parties which the court seeks to ascertain and make effective. Where, as in the present case, the circumstances of the claimed wrongful conduct dictate that damages resulting therefrom were intended to be dealt with in the agreement, there is no room for construction of the agreement. It speaks for itself.

The judgment is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Dooling, J., concurred.