[Civ. No. 37924. Second Dist., Div. Five. Dec. 14, 1972.]

MacDONALD & KRUSE, INC., Cross-complainant,
Cross-defendant and Appellant, v.
SAN JOSE STEEL COMPANY, INC., Cross-complainant,
Cross-defendant and Appellant;
CALIFORNIA ERECTORS, INC., Cross-defendant and Appellant;
THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS,
Cross-complainant and Respondent.

414

416

**COUNSEL**

Brill, Hunt, DeBuys & Burby, Edward A. DeBuys, Horvitz & Minikes and Ellis J. Horvitz for Cross-complainant, Cross-defendant and Appellant.

Veatch, Carlson, Dorsey & Quimby, Frederick C. Quimby, Jr., and Henry F. Walker for Cross-complainant, Cross-defendant and Appellant.

Wyman, Bautzer, Rothman & Kuchel and Charles L. Fonarow for Cross-defendant and Appellant.

Harry S. Fenton, Joseph A. Montoya, Robert L. Meyer, Hugh R. Williams and Christopher C. Foley for Cross-complainant and Respondent.

## OPINION

**STEPHENS, Acting P. J.**—This appeal arises out of indemnity litigation involving the State of California, a general construction contractor, and certain subcontractors. In brief, the state contracted with MacDonald & Kruse, Inc. (MacDonald) to have widened an existing overpass of the Long Beach freeway. MacDonald, as the general contractor, subcontracted with San Jose Steel Company, Inc. (San Jose) for the fabrication and erection of the steel that was to be used on the project, and San Jose, in turn, subcontracted the erection of the steel to California Erectors, Inc. (Erectors). During the course of the construction, an employee of Erectors (hereinafter, the employee) suffered physical injuries as a result of his falling from the overpass to the ground, a distance of some 32 feet. The employee instituted an action for personal injuries against the state, MacDonald, and San Jose, and was awarded judgment in the amount of $294,140 against the state and MacDonald, but not San Jose. Through cross-complaints, the state sought contractual indemnification from MacDonald; MacDonald sought contractual indemnification from San Jose; San Jose sought contractual indemnification from Erectors. The trial court found that the negligence of the state and MacDonald was not active, but that the negligence of Erectors was active. The trial court found that Erectors was San Jose's agent. Each cross-complainant prevailed, and MacDonald, San Jose and Erectors appeal.

The indemnification judgment in favor of MacDonald and against San Jose must be reversed.

The contract between MacDonald and San Jose provided in part that San Jose "shall hold [MacDonald] free and harmless from any and all damage to said work caused in the performance of said Subcontract and also from any and all liability, costs and charges arising out of injuries or damages to any and all persons, employees and/or property in any way caused by [San Jose], its agents or employees." ■ "Since the parties expressly contracted with respect to [the indemnitor's] duty to indemnify [the indemnitee], the extent of that duty must be determined from the contract and not from the independent doctrine of equitable indemnity.

[Citations.]" *(Markley* v. *Beagle,* 66 Cal.2d 951, 961 [59 Cal.Rptr. 809, 429 P.2d 129].)

San Jose contends that it is not liable to MacDonald under this provision because San Jose did not "cause" MacDonald's liability. Specifically, San Jose argues as follows: the jury found that the employee's injuries were caused by the negligence of the state, MacDonald, and Erectors; the jury found that San Jose had not acted negligently toward the employee; San Jose was liable to indemnify MacDonald only for MacDonald's liabilities that were caused by San Jose, San Jose's agents, or San Jose's employees; Erectors was San Jose's independent subcontractor, and the trial court erred in treating Erectors as San Jose's agent; therefore, MacDonald's liability was caused by persons who were neither San Jose, nor San Jose's agents, nor San Jose's employees.

In opposition, however, MacDonald cites the case of *Baldwin Contracting Co.* v. *Winston Steel Works, Inc.,* 236 Cal.App.2d 565, 576 [46 Cal. Rptr. 421] for the proposition that we may "interpret the term 'agent' . . . to cover more than the technical employees and hold that [the indemnitor] cannot avoid its indemnity obligation to [the indemnitee] by subcontracting its work out to other independent contractors [citations]." In addition, MacDonald argues that San Jose did cause MacDonald's liability. MacDonald reasons as follows: the contract between MacDonald and San Jose provided that "all rights and remedies reserved to [the state] under the general contract shall apply to and be possessed by [MacDonald] in its dealings with [San Jose]"; the contract between the state and MacDonald provided that MacDonald was to provide all safety equipment, and that "[n]o subcontractor will be recognized as such, and all persons engaged in the work of construction will be considered as employees of [MacDonald] and he will be held responsible for their work. . . ."; therefore, San Jose was under a duty to provide safety equipment, could not "delegate to Erectors the duty to provide safety nets," and, as a consequence, "caused" MacDonald's liability.

We need not resolve this conflict, for even if we assume arguendo that San Jose did cause MacDonald's liability, MacDonald cannot prevail.[1]

---

[1]Although we need not decide whether San Jose "caused" MacDonald's liability, the case of *Indenco, Inc.* v. *Evans,* 201 Cal.App.2d 369 [20 Cal.Rptr. 90] appears to support MacDonald's position. In *Indenco,* the general contractor promised "the Owner" that he would " 'place proper guards for the prevention of accidents.' " *(Id.* at p. 372.) The subcontractor promised the general contractor " '[t]o assume toward the [general contractor] all the obligations and responsibilities that the [general contractor] *assumes toward the Owners.* . . .' " *(Id.* at p. 371; italics omitted.) The

In general, all contractual indemnity provisions fall within one of three classifications: ▇ The first type of provision is that which provides "expressly and unequivocally" that the indemnitor is to indemnify the indemnitee for, among other things, the negligence of the indemnitee. Under this type of provision, the indemnitee is indemnified whether his liability has arisen as the result of his negligence alone (*Vinnell Co.* v. *Pacific Elec. Ry. Co.,* 52 Cal.2d 411 [340 P.2d 604]), or whether his liability has arisen as the result of his co-negligence with the indemnitor (*Markley* v. *Beagle, supra*).

▇ The second type of provision is that which provides that the indemnitor is to indemnify the indemnitee for the indemnitee's liability "howsoever same may be caused" (*Vinnell Co.* v. *Pacific Elec. Ry. Co., supra*) or "regardless of responsibility for negligence" (*Goldman* v. *Ecco-Phoenix Elec. Corp.,* 62 Cal.2d 40 [41 Cal.Rptr. 73, 396 P.2d 377]), or "arising from the use of the premises, facilities or services of [the indemnitee]" (*Harvey Machine Co.* v. *Hatzel & Buehler, Inc.,* 54 Cal.2d 445 [6 Cal.Rptr. 284, 353 P.2d 924]), or "which might arise in connection with the agreed work" (*Markley* v. *Beagle, supra*), or " 'caused by or happening in connection with the equipment or the condition, maintenance. possession, operation or use thereof' " (*Price* v. *Shell Oil Co.,* 2 Cal.3d 245 [85 Cal.Rptr. 178, 466 P.2d 722]), or "from any and all claims for damages to any person or property by reason of the use of said leased property" (*Morgan* v. *Stubblefield,* 6 Cal.3d 606 [100 Cal.Rptr. 1, 493 P.2d 465]). Under this type of indemnity provision, the indemnitee is indemnified from his own acts of passive negligence that solely or contributorily cause his liability, but is not indemnified for his own acts of active negligence that solely or contributorily cause his liability. Our Supreme Court explains that an actively negligent indemnitee will not be indemnified under this type of provision because "[t]he indemnification agreement resembles an insurance agreement" (*Goldman* v. *Ecco-Phoenix Elec. Corp., supra,* at p. 48) and an "indemnitor [will not] be made responsible for the [actively] negligent acts of an indemnitee over whose conduct it has no control [unless] the language imposing such liability should do so expressly and unequivocally so that the [indemnitor] is advised in definite terms of the liability to which it is exposed" (*Vinnell Co.* v. *Pacific Elec. Ry. Co., supra,* at pp. 416-417). A passively negligent

court held: "We must assume for the purpose of this case that the duty to provide a railing was a delegable one, which [the] general contractor . . . could lawfully delegate to its . . . subcontractor." (*Id.* at p. 376.)

However, as MacDonald has expressed in its brief, the duty to provide safety equipment was not delegable. Therefore, even if MacDonald did raise a duty in San Jose to provide safety equipment, MacDonald could not rid itself of its own duty to provide safety equipment, and MacDonald was therefore at least a contributing cause to its liability.

indemnitee will be indemnified under this type of provision, however, because such provisions "manifest that it is the intent of the parties" that the indemnitee's passive negligence "was one of the risks, if not the most obvious risk, against which [the indemnitee] sought to be covered." (*Harvey Machine Co.* v. *Hatzel & Buehler, Inc., supra,* at pp. 449, 448.) Most of our Supreme Court's work in the law of contractual indemnity has been with this type of provision and with the indemnitee who has himself been either solely or contributorily responsible for his liabilities. In these cases,[2] the determinative issue is whether the indemnitee's negligence was active or passive.

The third type of contractual provision is that which provides that the indemnitor is to indemnify the indemnitee for the indemnitee's liabilities caused by the indemnitor, but which does not provide that the indemnitor is to indemnify the indemnitee for the indemnitee's liabilities that were caused by other than the indemnitor. Under this type of provision, any negligence on the part of the indemnitee, either active or passive, will bar indemnification against the indemnitor irrespective of whether the indemnitor may also have been a cause of the indemnitee's liability. (*Goldman* v. *Ecco-Phoenix Elec. Corp., supra,* at p. 49.) "In view of the general rule that an . . . indemnity does not reach to protect the indemnitee from a loss to which his negligence has contributed, we must look at least for an express undertaking in the document that he is to do so." (*Id.* at p. 44.) Again, the rationale of this rule is that an indemnity contract "resembles an insurance agreement" (*id.* at p. 48), and an indemnitor will not be held responsible for more than that to which he has obligated himself by contract. Therefore, when an indemnitor expressly promises to be responsible for the indemnitee's own negligence, the indemnitor will be responsible for even active negligence on the part of the indemnitee; when an indemnitor expressly promises to be responsible for the indemnitee's liability " 'regardless of responsibility for negligence' " (*id.* at p. 46), the indemnitor will be responsible for the indemnitee's passive negligence, but not for the indemnitee's active negligence; and when an indemnitor expressly promises to be responsible for the indemnitee's liabilities caused by the indemnitor, but does not promise to be responsible for the indemnitee's liabilities caused by other than the indemnitor, the indemnitor will be held responsible for the indemnitee's liabilities that result "solely" (*id.* at p. 49) from the indemnitor's negligence,

---

[2] (*Vinnell Co.* v. *Pacific Elec. Ry. Co.,* 52 Cal.2d 411 [340 P.2d 604]; *Harvey Mach. Co.* v. *Hatzel & Buehler, Inc.,* 54 Cal.2d 445 [6 Cal.Rptr. 284, 353 P.2d 924]; *Markley* v. *Beagle,* 66 Cal.2d 951 [59 Cal.Rptr. 809, 429 P.2d 129]; *Price* v. *Shell Oil Co.,* 2 Cal.3d 245 [85 Cal.Rptr. 178, 466 P.2d 722]; *Morgan* v. *Stubblefield,* 6 Cal.3d 606 [100 Cal.Rptr. 1, 493 P.2d 465].)

but will not be responsible for the indemnitee's liabilities where the indemnitee's "negligence contributed to" the liability (*id.* at p. 49).

■ In the contract between MacDonald and San Jose, San Jose expressly promised MacDonald that San Jose would hold MacDonald "free and harmless from any . . . liability . . . caused by [San Jose], its agents or employees." Since San Jose's promise did not purport to indemnify MacDonald for liabilities caused other than by San Jose, and since MacDonald's own negligence, whether active or passive, was also a cause of MacDonald's liability, MacDonald is not indemnified by San Jose under this provision. (*Goldman* v. *Ecco-Phoenix Elec. Corp., supra,* at p. 49.)

■ The contract between MacDonald and San Jose also provided that "all rights and remedies reserved to [the state] under the general contract shall apply to and be possessed by [MacDonald] in its dealings with [San Jose]." One right reserved to the state under the contract between the state and MacDonald was that MacDonald was to indemnify the state "for any liability . . . from any cause whatsoever . . . ." MacDonald argues that since it promised to indemnify the state from liability "from any cause whatsoever," MacDonald is then entitled to be indemnified by San Jose "from any cause whatsoever." We cannot agree. In defining the scope of their contractual relationship, San Jose made MacDonald a general promise that San Jose would stand in relation to MacDonald as MacDonald stood in relation to the state. If MacDonald and San Jose had meant this literally, with no exceptions, they could have stopped there. But they did not stop there. They went on to define other particular rights and duties between one another. One of these particular areas of definition was San Jose's indemnity obligation to MacDonald. In this regard, San Jose specifically promised MacDonald that San Jose would indemnify MacDonald for liabilities caused to MacDonald by San Jose, but did not promise to indemnify MacDonald for MacDonald's liabilities caused by other than San Jose. This was San Jose's specific indemnity promise to MacDonald. Since "the well recognized rule applies that where a general and a particular provision of a written instrument are inconsistent, the particular controls the general" (*McNeely* v. *Claremont Management Co.,* 210 Cal.App.2d 749, 753 [27 Cal.Rptr. 87]), and since an indemnity "agreement must be strictly construed against the indemnitee" (*Goldman* v. *Ecco-Phoenix Elec. Corp., supra,* at p. 44), we find that San Jose did not promise to indemnify MacDonald "from any cause whatsoever." "[A]n indemnification agreement calling for financial protection against one's own negligence cannot rest upon language so loose and obscure as that of" a provision which provides that an indemnitor is " '[t]o be bound . . . in the same manner and to the same extent as the [indemnitee] is bound to the [indemnitee's indemni-

tee]' " notwithstanding the indemnitee has promised to indemnify his indemnitee " 'regardless of responsibility.' " (*Goldman* v. *Ecco-Phoenix Elec. Corp., supra,* at pp. 48, 42, 42-43, respectively.)[3]

However, even if we were to assume arguendo that San Jose did promise to indemnify MacDonald "from any cause whatsoever," MacDonald cannot prevail because (1) a promise to indemnify "from any cause whatsoever" is a general indemnity promise (cf. *Safeway Stores, Inc.* v. *Massachusetts Bonding & Ins. Co.,* 202 Cal.App.2d 99, 105 [20 Cal.Rptr. 820]) that "will not be interpreted . . . to provide indemnity for consequences resulting from the indemnitee's own actively negligent acts" (*Markley* v. *Beagle, supra,* 66 Cal.2d 951 at p. 962); (2) we believe that the trial court erred in finding MacDonald's negligence to be passive, and we hold that MacDonald's negligence was active as a matter of law.

A promise to hold an indemnitee harmless from liabilities "from any cause whatsoever" is a general indemnity promise that does not indemnify the indemnitee from the consequences of his own active negligence. An indemnitor will not be held to indemnify the indemnitee against the indemnitee's own actively negligent acts unless the indemnitor's promise " 'refer[s] expressly to [the indemnitee's] negligence . . . .' " (*Vinnell Co.* v. *Pacific Elec. Ry. Co., supra,* 52 Cal.2d 411 at p. 415.) Since a promise to indemnify "from any cause whatsoever" is not an express reference to the indemnitee's own negligence, then the indemnitee of such a promise will not be indemnified from consequences of his own active negligence. In addition, the following indemnitors' promises have all been held to be general indemnity promises: to hold the indemnitee harmless from the indemnitee's liabilities "howsoever same may be caused" (*Vinnell Co.* v. *Pacific Elec. Ry. Co., supra*), "regardless of responsibility for negligence" (*Goldman* v. *Ecco-Phoenix Elec. Corp., supra*), "arising from the use of the premises, facilities

---

[3]But compare, *Indenco, Inc.* v. *Evans, supra,* 201 Cal.App.2d 369, where "the general contractor had undertaken the construction of certain school buildings for the county and the district; the subcontractor, Evans, had agreed to install the roof of one building; the subcontractor executed a specific indemnity agreement by which he assumed '*all the obligations and responsibilities that the Contractor assumes toward the Owner* . . . insofar as applicable . . . [to] the work to be performed under this Subcontract.' (P. 371.) The subcontractor's foreman fell from the roof while installing it because of the absence of a railing required by law. Concluding that the subcontractor must indemnify the contractor, the court stated: '[T]he injury resulted from *conduct directly related to the work of Evans* and amounted to an affirmative breach of a legal duty to provide a railing. . . . [T]he *duty to provide a railing was a delegable one,* which Indenco, Inc. as general contractor, could lawfully delegate to its roofing subcontractor, Evans. *Under these circumstances,* we must conclude that the parties knowingly bargained for the very protection here in issue.' (P. 376; italics added.)" (*Goldman* v. *Ecco-Phoenix Elec. Corp.,* 62 Cal.2d 40, 47-48 [41 Cal.Rptr. 73, 396 P.2d 377].)

or services of [the indemnitee]" (*Harvey Machine Co.* v. *Hatzel & Buehler, Inc., supra*), "which might arise in connection with the agreed work" (*Markley* v. *Beagle, supra*), " 'caused by or happening in connection with the equipment or the condition, maintenance, possession, operation or use thereof' " (*Price* v. *Shell Oil Co., supra,* 2 Cal.3d 245), "from any and all claims for damages to any person or property by reason of the use of said leased property" (*Morgan* v. *Stubblefield, supra,* 6 Cal.3d 606) " '[caused by] any person or persons whomsoever' " (*Safeway Stores, Inc.* v. *Massachusetts Bonding & Ins. Co., supra,* 202 Cal.App.2d 99, 105). We believe that it is clear that a promise to indemnify an indemnitee "from any cause whatsoever" is like the promises in *Vinnell, Goldman,*[4] *Harvey, Markley, Price, Morgan* and *Safeway.*

Therefore, since a promise to indemnify "from any cause whatsoever" does not constitute an express and unequivocal reference to the indemnitee's own negligence, and since such a promise is juridically indistinguishable from other promises that have been held by our Supreme Court to be merely general indemnity promises, we must conclude that a promise to indemnify "from any cause whatsoever" is likewise a general indemnity promise.

Since a general indemnity promise does not protect the indemnitee from the consequences of his own active negligence, we next consider the character of MacDonald's negligence.

---

[4]We recognize that the court in *Goldman* stated that indemnity promises like "howsoever the [liability] may be caused" and "regardless of responsibility for negligence" do represent "[s]pecific language to spell out an indemnification agreement" and "explicitly provide for indemnification" against the indemnitee's own negligence. It is clear, however, that the court in *Goldman* was not saying that such promises would indemnify the indemnitee against his own acts of active negligence: first, our Supreme Court has expressly relied upon the *Goldman* case for the proposition that "[a]n indemnity clause phrased in general terms will not be interpreted . . . to provide indemnity for consequences resulting from the indemnitee's own actively negligent acts. [Citing *Goldman, supra,* at pages 44-45 and *Vinnell, supra,* at page 415.]" (*Markley* v. *Beagle, supra,* at p. 962.); second, the court in Goldman was not considering the question of whether the indemnitee was indemnified for his own *active* negligence, but instead was considering the question of whether the indemnitee was indemnified for *any* of his negligence that contributed to his own liability; and third, even if we assume that *Goldman* was saying that the promise to be liable "howsoever the same may be caused" was a promise to indemnify the indemnitee from his own active negligence, our Supreme Court, since *Goldman,* has cited the *Vinnell* case ("Howsoever same may be caused") as representative of a general indemnity promise that does not indemnify the indemnitee from the consequences of his own active negligence. (*Markley* v. *Beagle, supra,* at pp. 951, 962.) In addition, *Markley* has been since cited with approval in both *Price* and *Morgan.*

In *Morgan* v. *Stubblefield, supra* (p. 625), the California Supreme Court set forth the test for active negligence: "It has been said that if a plaintiff seeking indemnity personally participates in an affirmative act of negligence, or is physically connected with an act or omission by knowledge of or acquiescence in it, or fails to perform some duty in connection with the omission which he may have undertaken by virtue of his agreement, he may not obtain indemnity." ▮ We believe that MacDonald was actively negligent by its failure to perform its contractual undertakings. Specifically, MacDonald contracted to: (1) "keep [itself] fully informed of all existing and future State and national laws and county and municipal ordinances and regulations which may in any manner affect those engaged or employed in the work . . . and of all such orders and decrees of bodies or tribunals having any jurisdiction or authority over the same"; (2) "observe and comply with . . . all such [rules]"; and (3) "provide all safeguards, safety devices and protective equipment and take any other needed actions, on [its] own responsibility, or as the State highway department contracting officer may determine, reasonably necessary to protect the life and health of employees on the job and the safety of the public to protect property in connection with the performance of the work covered by the contract."[5] However, notwithstanding the fact that MacDonald's agents were aware of: (1) "the construction order that said [that] when the elevation is 25 feet or more above the ground, when the use of safety belts and life lines or more conventional types of safety are clearly impracticable, . . . safety nets should be put up";[6] (2) that the area in which the employee was working prior to the accident was more than 25 feet above the ground; (3) that "more conventional types of safety [were] clearly impractical [and] that safety nets should [have been] put up"; and (4) that MacDonald was employing safety nets at other locations on the construction site, MacDonald did not employ safety nets at the employee's work site for the reason that MacDonald "didn't have enough [safety nets] for the whole bridge." In light of MacDonald's express contractual undertaking to "provide all . . . safety devices and protective equipment and take other needed actions,"

[5]The quoted language in clauses (1), (2) and (3) is taken from the contract between the state and MacDonald; however, by MacDonald's own admission, "The MacDonald-San Jose Subcontract specifically incorporates by reference all of the provisions of the original [state-MacDonald] contract."

[6]Division of Industrial Safety Construction Safety Order 1671: "Where the elevation is 25 feet or more above the ground, water surface, or continuous floor level below, and when the use of safety belts and life lines or more conventional types of protection are clearly impractical, the exterior and/or interior perimeter of the structure shall be provided with an approved type safety net extending at least from such perimeter—extending at least 8-feet horizontally from such perimeter and being positioned at a distance not to exceed 10 feet vertically below where such hazards exist, or equivalent protection provided."

MacDonald's failure to provide the employee with a safety net was active negligence.

In addition, we believe that MacDonald was actively negligent because it "personally participate[d] in an affirmative act of negligence, . . ." (*Morgan* v. *Stubblefield, supra,* at p. 625.) In *Morgan* v. *Stubblefield, supra,* the general contractor had "created a hole in [a building] floor 12 inches square, which was either left uncovered or had a plywood cover with no device to hold it in place, and there was insufficient illumination in the building for safety, all in violation of construction safety orders. [The general contractor's] superintendent was on the job at the time of the accident, and there is no claim that [the general contractor] was unaware of the existence of the hole or not advised that plaintiffs [the subcontractor's employees] were working on a rolling scaffold in the building. [¶] [The general contractor] negligently created a condition which was a proximate cause of the accident [which resulted from the scaffolds rolling into the hole]. The conclusion is inescapable that [the general contractor] participated in an affirmative act of negligence which caused the injury and, therefore, its conduct may not be characterized as merely passive." (*Id.* at pp. 626-627.) We believe that there is a strong analogy between the facts of *Morgan* and the facts of the case before us. Just as in *Morgan,* MacDonald created an unprotected precipice in violation of a construction safety order, and just as in *Morgan,* MacDonald did not contend that it was unaware of the precipice and did not contend that it was unaware that the employee was working in the area of the precipice. If the conduct of the general contractor in *Morgan* constituted an affirmative act of negligence, then it must follow that MacDonald's conduct was also affirmative negligence, and it was error for the trial court to allow MacDonald indemnification against San Jose.

▇ In summary, then, San Jose's promise to indemnify MacDonald from liabilities caused by San Jose did not indemnify MacDonald because MacDonald's own negligence, whether active or passive, was a contributing cause of MacDonald's liability. In addition, even if San Jose were also deemed to have promised to indemnify MacDonald from liabilities "from any cause whatsoever," MacDonalds own active negligence constituted a bar to indemnification against San Jose.

▇ We next consider the indemnification judgment in favor of the state and against MacDonald. This judgment must be affirmed. In the contract between the state and MacDonald, MacDonald expressly promised to indemnify the state "for any liability . . . from any cause whatsoever

. . ."[7] This type of provision indemnifies the state against its own acts of passive negligence that solely or contributorily cause its liability, but does not indemnify the state against its own acts of active negligence that solely or contributorily cause its liability. (*Markley* v. *Beagle, supra,* 66 Cal.2d 951 at p. 962.) The state was found to have been negligent, but its negligence was found to have been passive.

The "character of an indemnitee's negligence is ordinarily a question of fact. . . ." (*Morgan* v. *Stubblefield,* 6 Cal.3d 606 at p. 625.) Since the state "was not actively engaged in the construction" (*Safeway Stores, Inc.* v. *Massachusetts Bonding & Ins. Co., supra,* 202 Cal.App.2d 99, 111, cited with approval in *Morgan* v. *Stubblefield, supra,* at p. 627), we find no error in the trial court's determination that the state's negligence was merely passive. The state's negligence did not constitute a bar to its indemnification from MacDonald.

The judgment in favor of the state and against MacDonald is affirmed; the judgment in favor of MacDonald and against San Jose is reversed, and, as a consequence, the judgment in favor of San Jose and against Erectors is reversed. San Jose to recover its costs from MacDonald; each of the other parties to bear its own costs.

Aiso, J., concurred.

**COLE, J.**[*]—I respectfully dissent. Rather than rely upon the classification of indemnity agreements attempted in the majority opinion, inquiry should be focused upon what the parties intended in the circumstances of this case. I recognize the general principle that "An indemnity clause phrased in general terms will not be interpreted . . . to provide indemnity for consequences resulting from the indemnitee's own actively negligent acts. . . ." (*Markley* v. *Beagle,* 66 Cal.2d 951, 962 [59 Cal.Rptr. 809, 429 P.2d 129].) Under the teaching of *Morgan* v. *Stubblefield,* 6 Cal.3d 606, 626 [100 Cal.Rptr. 1, 493 P.2d 465], I agree with the majority that MacDonald's negligence here was, as a matter of law, "active"[1] and that, as

---

[7]Even if we assume that the incorporation clause of the contract between MacDonald and San Jose created a similar duty in San Jose, MacDonald could not rid itself of its duty to the state because the contract between the state and MacDonald specifically provided that "[n]o subcontractor will be recognized . . . and all persons engaged in the work of construction will be considered as employees of [MacDonald] and [MacDonald] will be held responsible for their work."

[*]Assigned by the Chairman of the Judicial Council.

[1]It is true that the determination of the question of whether negligence is active or passive is ordinarily a question of fact. (*Morgan* v. *Stubblefield, supra,* 6 Cal.3d 606,

to the state, the indemnification agreement in its favor against MacDonald should be affirmed.

The majority's classification might have much to recommend it if indemnity contracts were all poured out of the same mold. But, as Chief Justice Traynor wrote in refusing to apply the parol evidence rule to an indemnity agreement "Words, however, do not have absolute and constant referents." (*Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.,* 69 Cal.2d 33, 38 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373].) The classification suggested, based as it must be on selective quotes of some of the language from dissimilar contracts in cases with often dissimilar facts relies on too unstable a platform for proper analysis. In fact, some of the analysis appears to me to be inaccurate. Thus, language[2] in *Goldman* v. *Ecco-Phoenix Elec. Corp.,* 62 Cal.2d 40, 46 [41 Cal.Rptr. 73, 396 P.2d 377], said in the majority opinion to be a general indemnity promise not sufficient to relieve an indemnitee from the consequences of his own active negligence was in fact stated in *Goldman* to be "specific language" which met the court's apparent approval as being sufficient to accomplish that result.[3]

Rather than the tripartite classification discerned by the majority I believe the proper unifying premise of the indemnity cases is one recognized in the majority opinion[4] but not applied here. It is the basic premise that the intention of the parties must be enforced by limiting the indemnity

---

625.) I would have left undisturbed the trial court's determination here that MacDonald's negligence was not active but for the fact that MacDonald's conduct cannot in my view be distinguished in any significant way from that of the general contractor (Associated) involved in *Morgan.*

[2] ("regardless of responsibility for negligence")

[3] The holding in *Goldman* was a very limited one. It involved an agreement whereby a subcontractor agreed to be bound to the general contractor " 'in the same manner and to the same extent as [general contractor] is bound to the Owner under the General Contract, *to the extent of work provided for in this agreement.*' " (62 Cal.2d at p. 46: italics by the Supreme Court.) It was the meaning of the italicized language which was the subject of dispute in *Goldman.* The court said of it: "We conclude only that an indemnification agreement calling for financial protection against one's own negligence cannot rest upon language so loose and obscure as that of the instant contract. The parties themselves encounter a deep disagreement as to its meaning. In the special circumstances of this undertaking of the subcontractor to hold the contractor harmless for its own negligence and in the use of this printed form contract for that purpose, we hold that the imposition of the obligation must be clear and express." (62 Cal.2d at p. 48.)

[4] The majority states that the rationale for the rule that there must be an express undertaking to indemnify from a loss occasioned by one's own active negligence is that "an indemnitor will not be held responsible for more than that to which he has obligated himself by contract."

to what the parties expected it to cover. The cases require no more. The senior of the Supreme Court decisions relied upon by the majority (*Vinnell Co.* v. *Pacific Elec. Ry. Co.*, 52 Cal.2d 411 [340 P.2d 604]), recognizes that this is indeed the reason for the rule: "Both by precedent and good reason, if an indemnitor such as the plaintiff is to be made responsible for the negligent acts of an indemnitee over whose conduct it has no control, the language imposing such liability should do so expressly and unequivocally so that the contracting party is advised in definite terms of the liability to which it is exposed." (52 Cal.2d at p. 416.) The same unifying thought was expressed in the next Supreme Court decision relied upon by the majority. (*Harvey Machine Co.* v. *Hatzel & Buehler, Inc.*, 54 Cal.2d 445 [6 Cal.Rptr. 284, 353 P.2d 924].) There in upholding an indemnity agreement the court held that "The accident, in these circumstances, was one of the risks, if not the most obvious risk, against which [the indemnitee] sought to be covered. This realistic approach cannot be sacrificed to the formalism of rules of construction where the circumstances are inconsistent with the need of an application of such rules in order to determine the parties' intentions. . . ." (54 Cal.2d at pp. 448-449.) The majority makes the forbidden sacrifice.

Here we find that MacDonald, as general contractor, agreed with the state to be responsible to it "for injuries to . . . any person . . . resulting from any cause whatsoever during the progress of the work . . ." and to indemnify the state "from all claims, suits or actions of every name, kind and description, brought . . . on account of . . . injuries to . . . any person . . . resulting from the construction of the work or by *or in consequence of any negligence in guarding the work* . . ." Having thus obligated itself to the state—an obligation which I agree MacDonald is bound to honor—MacDonald then secured from its subcontractor San Jose not only an agreement that San Jose should hold MacDonald harmless from liability arising out of injuries to any persons caused by San Jose *but also* an agreement that San Jose "shall be bound by all the terms and conditions of the general contract and its plans and specifications and shall strictly comply therewith." MacDonald went further and secured from San Jose an agreement that "all rights and remedies reserved to [the state] under the general contract shall apply to and be possessed by [MacDonald] in its dealings with [San Jose]."[5] Obviously one of the rights "possessed by" MacDonald was the right to be indemnified by San Jose "on account of . . . injuries to . . . any person . . . in consequence

---

[5]Because of this language I do not pause to consider the problems of multiple causation discussed in the first portion of the majority opinion.

of any negligence in guarding the work." This is the precise negligence which occurred and no evidence in the record suggests that San Jose did not know exactly what contractual obligations it assumed. The language clearly accomplished its basic function of advising the indemnitor of the liability to which it was exposed. Clearly the loss which occurred was one of the risks against which MacDonald sought to be covered. *Indenco, Inc.* v. *Evans,* 201 Cal.App.2d 377 [20 Cal.Rptr. 90] is on all fours.

The majority opinion candidly recognizes in two places that it cannot explain away *Indenco*. (See majority opinion fns. 1 and 3.) The same unifying principle discussed above is recognized and applied in *Indenco*. The court there held that liability existed because under the circumstances of that case (which are also the circumstances of this case) "we must conclude that the parties knowingly bargained for the very protection here in issue." (201 Cal.App.2d at p. 376.) Here MacDonald secured San Jose's agreement for such protection and should not be deprived of it.[6]

A petition for a rehearing was denied January 3, 1973. Cole, J.,* was of the opinion that the petition should be granted. The petition of appellant MacDonald & Kruse, Inc. for a hearing by the Supreme Court was denied February 8, 1973.

---

[6]Because this is a dissenting opinion and my views are not to prevail, I do not discuss the issue, also raised by the parties, of whether California Erectors, Inc. was or was not a party for whose conduct San Jose could causally be liable.

*Assigned by the Chairman of the Judicial Council.