[Civ. No. 55960. Second Dist., Div. Five. Mar. 28, 1980.]

ARMCO STEEL CORPORATION,
Cross-complainant and Appellant, v.
ROY H. COX COMPANY, INC.,
Cross-defendant and Respondent.

930

COUNSEL

Ruston & Nance, Edward K. Nance, Jr., and Joan E. Spurney for Cross-complainant and Appellant.

Morris & Polich, Douglas C. Purdy, Jeffrey S. Barron and Robert S. Wolfe for Cross-defendant and Respondent.

OPINION

**HASTINGS, J.**—This is an appeal from a summary judgment in favor of cross-defendant Roy H. Cox Company, Inc. (Cox) and against Armco Steel Corporation (Armco) cross-complainant and appellant.

Armco employed Cox to clean and paint the interior area and ducting of a "bag house" at an Armco steel plant. A "bag house" operates as a giant vacuum cleaner to filter dust, dirt and other particulate matter which is created in the course of the steel manufacturing process. The contract between Armco and Cox was a "purchase order" on a form prepared and printed by Armco. The price for the work was $1,029 and on the back of the purchase order there was a 3-part indemnity clause of more than 200 words. The clause pertinent to this appeal reads as follows: "If this purchase order requires the performance of work or services on Buyer's property, Seller [Cox] shall indemnify and save harmless Buyer [Armco] of and from any loss, cost, damage or expense arising from...(c) any and all claims which may be made against Buyer by reason of injury or death to person or damage to property however caused or alleged to have been caused and even though claimed to be due to the negligence of Buyer, suffered or claimed to have been suffered by Seller or any subcontractor of Seller or by any of their employees, workmen, servants or agents."

In accordance with the contract, two of Cox's employees, Edward Chase and Charles Hollingsworth, were engaged in painting the vertical portion of the major duct within the Armco "bag house." To do the work, they leaned an aluminum extension ladder against the duct. Chase worked from the top of the ladder while Hollingsworth stood at the base holding it in place. The duct, where the employees were painting, is connected to an exhaust blower. When activated a fan rotates forcing air to move through the intake ducts into the bag area at an approximate velocity of 50 miles per hour. Only Armco employees operated the system which was designed by Armco employees. A few minutes after Chase had reached the top of the ladder, he saw four Armco employees walk by the control center located about eight to ten

feet from the ladder on which he was standing. He noticed one of the Armco employees operating the control panel and then they left the area. He climbed down from the ladder for a cigarette break and then returned to the top of the ladder and began painting a portion of the duct. About two minutes after he resumed painting, the motor began to operate, the duct vibrated causing the ladder to move to the left and Chase fell into the open fan.

Chase filed a complaint against Armco, Cox and others not involved in this appeal for the personal injuries he sustained in the accident. Armco filed a cross-complaint for express indemnity against Cox based on the indemnity provisions contained in the "purchase order."

The issues raised in the Chase personal injury action were tried in late 1974 and the cross-complaint of Armco was severed by court order. Also, the Chase personal injury action was bifurcated as to the issues of liability and damages. As to liability, a jury verdict was returned in favor of Chase and against Armco and on the issue of damages the jury again returned a verdict in favor of Chase and against Armco in the sum of $316,000. There is also a directed verdict against Armco and for Chase's workers' compensation carrier who intervened to recoup the amount of compensation benefits paid.

The court order for summary judgment was granted on the theory that Armco's cross-complaint presented no triable issue of fact. Cox maintains this reasoning is supported by the fact that Armco had a trial on the merits which determined that Armco's actions proximately caused Chase's injuries and the resulting judgment collaterally estops Armco from denying its own responsibility or asserting that of Cox. Armco dismissed its appeal in said action and the trial judgment is final. Furthermore, Cox argues that because Armco dismissed with prejudice other parties allegedly liable for the action, Civil Code section 2782 bars the solely negligent Armco from pushing its liability upon the faultless Cox.[1] Section 2782 declares that an agreement which creates a right to indemnity for the "sole negligence" of the indemnitee or persons for whom it is directly responsible is void as against public policy and unenforceable.

---

[1] Civil Code section 2782 provides: "All provisions, clauses, covenants, or agreements contained in, collateral to, or affecting any construction contract and which purport to indemnify the promisee against liability for damages for (a) death or bodily injury to persons, (b) injury to property, (c) design defects or (d) any other loss, damage or expense arising under either (a), (b), or (c) from the sole negligence or willful misconduct

Cox also argues that Armco cannot recover under California law for its own active or affirmative negligence unless the indemnification clause specifically and unabiguously provides for indemnity for liability arising out of its own active negligence.

Armco concedes that the decision of the trial court in granting the summary judgment was based on either (1) determination that the indemnity provision was void under Civil Code section 2782, or (2) application of the theory of collateral estoppel in that Armco was an actively negligent party. Armco contends however, that the summary judgment was erroneously granted because: (1) the indemnity provision was not of the kind contemplated by the California Legislature under Civil Code section 2782 and (2) the issue of its active negligence should have been litigated, rather than disposed of by application of collateral estoppel.

### *Discussion*

■ Was the indemnity provision void under Civil Code section 2782?

This section invalidates (for public policy reasons) an indemnity clause in a construction contract that seeks indemnification against liability for damages caused by the sole negligence of the indemnitee (Armco). Armco claims the indemnity clause here is not that specific. It provides Cox will indemnify Armco from "(c) any and all claims which may be made against Buyer [Armco] by reason of injury or death to person or damage to property *however caused or alleged to* have been caused and even *though claimed to be due to the negligence of Buyer,...*" Because this language would include concurrent negligence of Cox and Armco, as well as Armco's sole negligence, it is argued the provision is a general indemnity clause and not covered by section 2782. Armco relies on footnote number 8 in *Gonzales* v. *R. J. Novick Constr. Co.* (1978) 20 Cal.3d 798 at page 809 [144 Cal.Rptr. 408, 575 P.2d 1190] that states in part: "'If it had been the intention of the Legislature, in passing section 2782, to nullify all general indemnity clauses not containing an express disclaimer of any right to indemnifi-

---

of the promisee or the promisee's agents, servants or independent contractors who are directly responsible to such promisee, are against public policy and are void and unenforceable; provided, however, that this provision shall not affect the validity of any insurance contract, workmen's compensation or agreement issued by an admitted insurer'as defined by the Insurance Code."

cation for the promisee's sole negligence, we have no doubt that that intention would have been clearly stated.'"

In *MacDonald & Kruse, Inc.* v. *San Jose Steel Co.* (1972) 29 Cal. App.3d 413, 419 [105 Cal.Rptr. 725], the court classified indemnity clauses. Type I provides "expressly and unequivocally" that the indemnitor is to indemnify the indemnitee *for the indemnitee's negligence.* Under this provision, the indemnitee is indemnified whether his liability has arisen as the result of his negligence alone or of his concurrent negligence with the indemnitor. In construction contracts section 2782 thus prevents indemnification for the indemnitee's sole negligence but does not prevent indemnification where there is concurrent negligence. This conclusion is supported by other language in footnote 8 of *Gonzales, supra,* 20 Cal.3d 798, 809, where the court states: "We think it manifest that the purpose of the Legislature in passing section 2782, having in view certain language previously uttered by this court in the case of *Goldman* v. *Ecco-Phoenix Elec. Corp.* (1964) 62 Cal.2d 40, 48-49,... was to insure that an indemnitee would not, by contractual language *however specific,* require indemnity for damages sustained as a result of its *sole* negligence or willful misconduct." (Italics in original.)

Armco in its cross-complaint for indemnification is seeking full indemnification even if it was also actively negligent. A good argument can be made that such a claim is also contrary to public policy. However, the Legislature was aware of the distinction between sole negligence and concurrent negligence when it passed section 2782 in 1967. Any change in the law to prevent full indemnification when the indemnitee is also negligent must come from the same body.

█ Although the trial court should not have granted the summary judgment under section 2782, there is still another rule of law in this complex legal area of indemnification that supports the trial court's ruling. A type II indemnification clause under *MacDonald & Kruse, Inc., supra,* 29 Cal.App.3d 413, 419, is one where the indemnitee is indemnified from its own acts of *passive* negligence that solely or contributorily cause its liability but is not indemnified for its own acts of active negligence. In *MacDonald & Kruse, Inc.* and *Goldman,* the opinions state that an indemnitee cannot be indemnified for its own "active" negligence unless the language imposing such liability should do so expressly and unequivocally so that the indemnitor is advised in definite terms of the liability to which it is exposed. The clause in the contract here does

not meet the test and falls into the type II classification[2] that would indemnify Armco only if its negligence was passive.

Armco, in seeking to establish that the lower court was wrong in granting the summary judgment agrees that the indemnity clause is uncertain or ambiguous and therefore its interpretation was dependent upon extrinsic facts that required the trier of fact to determine the parties' understanding of the clause. Realizing that this position probably establishes the indemnity provision as a type II classification Armco argues that there has been no determination that its negligence was "active," and this must also be decided by the trier of fact.

It cannot be reasonably argued that Armco's negligence could be classified as passive rather than active. At the conclusion of the first phase of the trial the jury found Armco not Cox legally responsible for Chase's injuries. While in a special verdict the jury determined that Cox was negligent it did specifically find that its negligence was not the proximate cause of Chase's injuries. Accordingly, the trial court directed a verdict in favor of the plaintiff in intervention, Cox's compensation carrier, for $20,596, the full amount of its lien.[3]

After trial of the second phase the jury fixed Chase's damages at $316,000 and a judgment against Armco for this amount with legal interest was entered.

There was substantial evidence to establish Armco's personal participation in the negligence that caused Chase's injuries. Chase fell off the ladder because of vibrations caused by the activation of a nearly "100-horsepower" motor. Armco designed the filtration system and knew that it caused vibrations in the area in which Chase was working. Only Armco employees operated the system. Armco did not provide warnings to persons working on the system that it was about to start. Minutes before the accident Armco employees observed Chase while he was work-

---

[2]In the recent and similar case construing a general indemnification clause *Guy F. Atkinson Co.* v. *Schatz* (1980) 102 Cal.App.3d 351, 357 [161 Cal.Rptr. 436], the court is in agreement stating: "Surely clearer and more explicit language could be found to express the simple proposition that the agreement is to provide indemnity whether the indemnitee is negligent actively, passively, or not at all."

[3]It is true that the trial judge was surprised by the verdict that found no proximate cause on the part of Cox. The judge felt that Cox's concurrent negligence in not erecting protective scaffolding at the scene of the accident was also a proximate cause of the accident. This belief by the trial court judge however does not negate the jury's verdict of active negligence on the part of Armco.

ing on the ladder. Nevertheless, Armco employees turned on the system that caused the accident.

Armco citing *Rossmoor Sanitation, Inc.* v. *Pylon, Inc.* (1975) 13 Cal.3d 622, 629 [119 Cal.Rptr. 449, 532 P.2d 97], states that active or passive negligence depends upon the circumstances of a given case and is ordinarily a question for the jury. It is only when the evidence as to active negligence is so clear and undisputed that reasonable men could not disagree that active negligence may be found as a matter of law. Armco claims that its negligent design, its failure to provide safety equipment and/or failure to warn Chase of a dangerous condition could qualify as passive negligence. If these facts were standing alone we could agree but clearly the other affirmative activity on the part of Armco convinced the jury that it was an active participant.

Contrary to Armco's contention there can be a holding of active negligence as a matter of law where justified by the facts. In *Morgan* v. *Stubblefield* (1972) 6 Cal.3d 606 at page 627 [100 Cal.Rptr. 1, 493 P.2d 465], the Supreme Court reversed the jury verdict in favor of the contractor on its indemnity cross-complaint where the contractor had created a hole on a level concrete floor and left the hole uncovered. Finding that the contractor was actively negligent as a matter of law it stated: "Here, by contrast, [the general contractor] negligently created a condition which was a proximate cause of the accident. The conclusion is inescapable that [the general contractor] participated in an affirmative act of negligence which caused the injury and, therefore, its conduct may not be characterized as merely passive." (*Id.*)

In conclusion we hold that the indemnity clause in question was a type II clause in that it failed to "expressly and unequivocally" provide that Armco could be indemnified for its own active negligence; that the issue of negligence was tried and under the facts of this case the court was correct in granting the summary judgment based on the jury verdict that supports a finding of active negligence on the part of Armco.

The summary judgment is affirmed.

Stephens, Acting P. J., and Ashby, J., concurred.