[Civ. No. 30587.   Second Dist., Div. Two.   July 6, 1967.]

SOL S. BUCHALTER, as Administrator With the Will Annexed, etc., et al., Cross-complainants and Appellants, v. M. H. LEVIN, Cross-defendant and Respondent.

Mazirow & Schneider and Arthur Mazirow for Cross-complainants and Appellants.

Charles L. Lippitt for Cross-defendant and Respondent.

HERNDON, J.—Cross-complainants appeal from the judgment entered in respondent's favor following a nonjury trial of their cross-action seeking recovery under an indemnity agreement for attorneys' fees incurred in defense of the primary action. In essence, the determinative question presented by this appeal is the following:

Is the indemnitee under the terms of the indemnity agreement here involved entitled as a matter of law to recover from the indemnitor the attorneys' fees charged by separate counsel employed by the indemnitee to defend him in connection with a suit based upon the subject of the agreement where the indemnitor had indicated willingness to accept the burden of his defense and where the indemnitee made no showing of a need for the employment of separate and additional counsel? Statutory and decisional law require that this question be answered in the negative.

The facts herein are not in dispute since they are recited in the preamble to the instant indemnity agreement. Some time prior to November 11, 1962, appellants had inspected certain real property in Panorama City, California, in the company of Byron Thomas, a broker employed by R. E. Driscoll Company, with the prospective purpose of leasing the property and a building located thereon. They decided not to lease the property and had no discussions with the broker concerning the possibility of purchasing it. They did not know whether or not the property was for sale. Subsequently, however, they contacted respondent, a real estate broker, and asked him to determine whether the building and other buildings on the property were for sale and if they were to negotiate on their behalf for the purchase thereof.

As the result of these negotiations an oral agreement was reached with the owners of the property as to the price and terms of a sale. However, before the parties were to enter escrow they were advised by the owners' attorney that R. E. Driscoll Company might claim a commission in connection

with the sale. The indemnity agreement then continued and concluded as follows:

"8. WHEREAS, [appellants] feel that if said Byron Thomas or R. E. Driscoll Company institute suit for a commission due to [appellants'] purchase, that [appellants] may become involved in said litigation in some manner, and

"9. WHEREAS, [appellants] have no desire to become involved in said litigation, and

"10. WHEREAS, [appellants] would not enter into formal escrow agreements to purchase said property if [respondent] did not enter into this agreement.

"Now, THEREFORE, IN CONSIDERATION OF THE MUTUAL COVENANTS HEREINAFTER CONTAINED, THE PARTIES HERETO AGREE AS FOLLOWS: . . .

"2. [Appellants] agree to enter into escrow agreements with the owner of the real property known as 14624-30 Titus Street, Panorama City, California whereby [appellants] agree to purchase said property upon certain terms and conditions.

"3. [Respondent] hereby covenants and agrees to indemnify and hold harmless [appellants] and their wives and each of them from any and all liability, loss, costs, judgments, court costs, interest, and attorneys fees that may be incurred by or rendered against [appellants], or any of them, as a result of Byron Thomas, R. E. Driscoll Company or their agents or assigns instituting suit against [appellants] and their wives or any of them for any reason whatsoever arising from [appellants] and their respective spouses purchasing the aforementioned property."

Thereafter, appellants completed purchase of the property on December 28, 1962, and on June 14, 1963, R. E. Driscoll Company filed suit against the owners of the property for a commission. Named as codefendants in this action were appellants, respondent and a brokerage firm with whom respondent was associated, each of whom it was alleged had wrongfully and maliciously interfered with the Driscoll Company's contract with the owners of the property thereby inducing the owners to breach their agreement with the Driscoll Company. Upon being notified that appellants had been served with process in this action, respondent offered to provide legal representation for appellants in accordance with the terms of their indemnity agreement. Appellants rejected this offer and hired other counsel, who on January 15, 1964, answered the complaint on appellants' behalf and filed a cross-complaint based on the indemnity agreement. Respondent answered the

cross-complaint admitting the execution of the agreement but denying that any liability thereunder as yet had been incurred. Thereafter, respondent negotiated a settlement of the primary action and the action was dismissed with prejudice as to all parties. On September 23, 1965, trial was had upon appellants' cross-complaint and resulted in the judgment from which the present appeal is prosecuted.

The rules for interpreting indemnity agreements are set forth in Civil Code, section 2778, enacted in 1872. They have remained unamended since that date and have received clear and consistent interpretation and application by the courts. Subdivision 3 thereof expressly provides: "An indemnity against claims, or demands, or liability, expressly, or in other equivalent terms, *embraces the costs of defense* against such claims, demands, or liability *incurred in good faith, and in the exercise of a reasonable discretion.*" (Italics added.)

Of course, an indemnitee is always free to conduct his own defense despite the obligation imposed upon the indemnitor so to do. Subdivision 4 of section 2778 provides: "The person indemnifying is bound, on request of the person indemnified, to defend actions or proceedings brought against the latter in respect to the matters embraced by the indemnity, but the person indemnified has the right to conduct such defenses, if he chooses to do so." However, absent some contractual privilege so to do or some showing of sufficient justification or need therefor, an indemnitee ordinarily may not refuse to join in or cooperate with the indemnitor's proffered defense and still recover his separate and redundant attorneys' fees and costs.

"[I]f the indemnitor is properly notified and does not avail itself of the opportunity to defend an action, thus causing the indemnitee to incur the costs and attorneys' fees necessary in presenting his own defense, this is considered a cost of defense incurred in good faith and in the exercise of reasonable discretion, for which the indemnitee may recover. On the other hand, if the indemnitor notifies the indemnitee that he will defend an action against the indemnitee, and does so, the indemnitee is not entitled to recover fees of his attorneys for their participation in the defense with permission of the indemnitor, where such intervention was not required by the terms of the agreement and according to the evidence was wholly voluntary and gratuitous." (26 Cal.Jur.2d, Indemnity, § 26, pp. 365-366; *Tulare County Power Co.* v. *Pacific Surety Co.*, 43 Cal.App. 315, 330 [185 P. 399].)

In *Security Bldg. & Loan Assn.* v. *Maryland Cas. Co.*, 6

Cal.App.2d 77, 79-80 [44 P.2d 370], the court answered appellant-indemnitor's claim that respondent-indemnitee should not have been allowed to recover attorneys' fees incurred in defense of an action brought against him in the following language: "[T]he record shows that respondent upon being served with the summons and complaint in the former action promptly notified appellant of the fact, tendered the defense to appellant and advised appellant that if it did not defend the action respondent would hold it for the amount of the judgment recovered, together with the costs and attorney fees incurred. Appellant did not avail itself of the opportunity and left the defense of the action to respondent, thus causing the latter to incur the items for costs and attorney's fees heretofore mentioned. Section 2778 further provides that an indemnity against liability 'embraces the costs of defense against such claims, demands, or liability incurred in good faith, and in the exercise of a reasonable discretion', a provision which of itself answers appellant's contention so that it is not necessary to devote any extended space in pointing out that the loss suffered by respondent from the fraudulent act of Owen was not merely the loss suffered by having to reimburse Scott but also the loss suffered directly by respondent, which as a proximate result of the acts of Owen was compelled to expend money for attorney's fees and costs, a *loss which appellant could and would have avoided had it taken over the burden of meeting the claim of Scott.*" (Italics added.)

Consistent with this basic rule are decisions such as *Safeway Stores, Inc.* v. *Massachusetts Bonding & Ins. Co.*, 202 Cal.App.2d 99 [20 Cal.Rptr. 820], wherein recovery of separately incurred attorney's fees have been upheld where the indemnitee has introduced sufficient evidence to support the trier of the fact's determination that a valid need therefor existed. In *Safeway* the court stated, pp. 115-116:

"In the instant case, although the indemnitor (King) originally undertook the defense of the damage actions, it later became apparent that he primarily had his own interests in mind. He took the position that he would not be liable under the indemnity provisions, if Safeway were negligent. As we have shown, King would be liable under the indemnity contract, even if Safeway were negligent, but not affirmatively or actively so. With such a misconception on King's part of his obligations under the contract, the trial court could have well believed that Safeway had good reason to conclude King was not fully representing Safeway's interests and therefore would not fully comply with his agreement. *Indeed King's*

*defense of Safeway became qualified and technical rather than fully promotive of Safeway's interests as the agreement contemplated. From the above evidence, the court below could have reasonably inferred that King's position amounted to a refusal to defend the real interests of the indemnitee and hence a failure and refusal to perform his obligations under the indemnity contract.* Safeway in no way became a volunteer. To paraphrase the *Pacific Telephone* case [170 Cal.App. 2d 387 [338 P.2d 984)], it was faced with the compulsion of suits by the injured employees and had before it the promise of repayment in the indemnity contract. It always had the right to conduct the defenses of such actions, if it chose to do so. (Civ. Code, § 2778, subd. 4.) Confronted with a delicate and precarious situation which had arisen over the defense of the actions not through any act of Safeway's but in fact from King's change of position, Safeway appears to us to have acted sensibly and diligently in disposing of the problem." (Italics added.)

No such circumstances were established in the instant case. Appellants conceded that no conflict of interests existed. They offered no evidence suggesting that they had any reason to believe that respondent would not provide them with a full and adequate defense or that he would be unable or unwilling to satisfy in full any judgment that might be rendered in Driscoll's favor. The one appellant called as a witness in the instant action contented himself with testifying that he "just didn't trust [respondent] to protect [his] interests." Appellants objected to respondent's attempt on cross-examination to learn the basis for such asserted lack of trust and appellants contend in their closing brief that "whether or not the lack of trust was justifiable is irrelevant."

Appellants cite no authority in support of this unusual contention. Rather appellants argue that the prior appellate decisions establishing the general rules above set forth are erroneous and based upon a misinterpretation of subdivision 3 of Civil Code, section 2778, *supra.* That is to say, appellants assert that when the Legislature enacted this statute, its intent was to limit an indemnitee's right to recover attorneys' fees, not to those *fees* "incurred in good faith, and in the exercise of a reasonable discretion," but rather to those fees incurred in defending against "claims, demands, or liability" when such *"claims, demands, or liability"* were "incurred in good faith, and in the exercise of a reasonable discretion."

We find this argument wholly unpersuasive. In many instances the "claims, demands, or liability" that may be asserted against an indemnitee will not have been "incurred" by him at all but rather will have arisen by reason of circumstances existing prior to the execution of the indemnity agreement, the agreement having been designed to preclude the indemnitee from being burdened therewith. In many other instances they will arise by reason of the indemnitor's breach of his contractual duties to the indemnitee, whether intentional or as the result of negligence, and the indemnitee will have had no direct connection with the actions of the indemnitor on which they are based. Finally, many "claims, demands, or liability" will be sham or otherwise unmeritorious, although such fact will not be established until a successful defense thereto has been made.

The rules applicable in cases wherein an indemnitee is contending that the indemnity agreement was intended to indemnify him from his own negligent or improper conduct are well defined (cf. *Harvey Machine Co.* v. *Hatzel & Buehler, Inc.*, 54 Cal.2d 445, 447-448 [6 Cal.Rptr. 284, 353 P.2d 924]) and are wholly irrelevant to subdivision 3 of section 2778 or the facts of the instant case. Further, even if an indemnitee's right to attorneys' fees were limited to specific types of "claims, demands, or liability" as asserted by appellants, nevertheless even as to those "claims, demands, or liability" the indemnitor would not be chargeable for attorneys' fees which were not incurred in good faith and in the exercise of a reasonable discretion. "Reasonableness in the exercise of rights is a fundamental tenet of the law, . . ." (*Wall* v. *Shell Oil Co.*, 209 Cal.App.2d 504, 516 [25 Cal.Rptr. 908].)

Appellants also contend that subdivision 4 of Civil Code, section 2778, *supra*, which establishes an indemnitor's obligation to defend the indemnitee upon request, even though the indemnity agreement does not expressly so provide, but which also recognizes an indemnitee's right to conduct his own defense "if he chooses to do so," should be construed to authorize every indemnitee to reject the indemnitor's proffered defense, with or without cause, and still recover for his separate attorneys' fees voluntarily incurred. We are unwilling to so extend this section.

It is now settled that "Indemnity agreements, like other contracts, must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful."

(*Indenco, Inc.* v. *Evans,* 201 Cal.App.2d 369, 374 [20 Cal. Rptr. 90].) "An indemnity agreement is to be construed like any other contract with a view to determining the actual intention of the parties; no artificial rules apply." (*Fidelity & Deposit Co.* v. *Whitson,* 187 Cal.App.2d 751, 756 [10 Cal. Rptr. 6].)

In the preamble to the instant agreement it is expressly stated that appellants had "no desire to become involved in the potential litigation" subsequently instituted by the Driscoll Company. The trial court reasonably found and held that the parties intended that respondent would fulfill his obligations under this agreement if he spared appellants the expense and burden of becoming so involved by accepting their defense and paying the costs and attorneys' fees incurred therein, and by paying any judgment that might be rendered against them. The trial court was not bound as a matter of law to construe this agreement to mean that even though respondent willingly undertook appellants' defense and managed it successfully, he nevertheless should be bound also to reimburse any or all of the six indemnitees if any of them should determine in their unlimited discretion to employ separate counsel.

The determination made by the trial court in the instant case receives additional support from the facts surrounding the contingency the agreement was designed to meet. It must have been apparent to all parties that if the threatened suit by the Driscoll Company should materialize, respondent would certainly be a co-defendant therein, and it is scarcely to be imagined that respondent's liability under any possible judgment would be less than coextensive with appellants. Under such circumstances it seems no more than reasonable to conclude that the parties intended that respondent would be authorized to conduct their joint defense and hold appellants harmless therein. "A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates." (Civ. Code, § 1647.)

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 4, 1967.