UNITED RIGGERS & ERECTORS, INC.
a California corporation,
Plaintiff-Appellee,

v.

MARATHON STEEL COMPANY, an Arizona corporation; Amax Coal Company, a division of Amax, Inc., Meadowlark Farms, Inc., an Indiana corporation, a wholly-owned subsidiary of Amax, Inc., a New York corporation; the Nicholson Company, an Ohio corporation; and Does 1 through 10, inclusive, Defendants.

MARATHON STEEL COMPANY, an
Arizona corporation, Third-Party
Plaintiff,

v.

HARTFORD ACCIDENT AND INDEMNITY COMPANY, Third-Party Defendant and Third-Party Plaintiff-Appellant,

v.

UNITED RIGGERS AND ERECTORS, INC., a California corporation, Johnson Mechanical Contractors, Inc., a California corporation; Joseph D. Kruss, Marcella F. Kruss, Roy I. Bowlin and Doris Bowlin, Third-Party Defendants-Appellees,

MARATHON STEEL COMPANY, an
Arizona corporation, Third-Party
Plaintiff,

v.

The WESTERN CASUALTY AND
SURETY COMPANY, Third-Party
Defendant.

STATE, INC., (NEWBERY-STATE,
INC.), a Colorado corporation,
Plaintiff,

v.

MARATHON STEEL COMPANY, an
Arizona corporation, Defendant and
Third-Party Plaintiff,

v.

NICHOLSON CONSTRUCTION COMPANY, an Ohio corporation; United Riggers and Erectors, Inc., a California corporation; Amax Coal Company, a division of Amax, Inc., a New York corporation; Hartford Accident and Indemnity Company, a Connecticut corporation; and the Western Casualty and Surety Company, a Kansas corporation, Defendants.

No. 81-1717.

United States Court of Appeals,
Tenth Circuit.

Jan. 11, 1984.

Thomas G. Ottenweller, San Francisco, Cal., for Hartford Acc. and Indem. Co.

George A. Zunker of Urbigkit & Whitehead, Cheyenne, Wyoming, for United Riggers & Erectors, Inc.

Before DOYLE, LOGAN and SEYMOUR, Circuit Judges.

LOGAN, Circuit Judge.

This diversity case arises out of a dispute between contractors erecting a coal preparation plant in Wyoming. Marathon Steel Company was the general contractor for the project, United Riggers & Erectors, Inc. was one of Marathon's subcontractors, and Hartford Accident and Indemnity Company was the surety on United Riggers' performance bond. We must decide whether the trial court erred in refusing to order United Riggers to reimburse Hartford for attorney's fees and other costs it incurred in conducting a defense separate from United Riggers' defense in litigation with Marathon.

Problems and delays plagued the construction project from the beginning. United Riggers was forced to begin working on its portion of the construction at a later date than planned, apparently in part because of problems caused by another Marathon subcontractor. This in turn resulted in delays and weather related problems for Marathon, United Riggers, and other subcontractors. Ultimately, Marathon terminated United Riggers' subcontract because of dissatisfaction with its performance. Another Marathon subcontractor completed United Riggers' portion of the project.

After terminating United Riggers, Marathon attempted to execute on United Riggers' performance bond. Hartford contested Marathon's right to the bond, claiming that United Riggers had not defaulted on its contract with Marathon and that in any event Hartford was released from the bond because United Riggers and Marathon had materially modified the contract without Hartford's consent. However, Hartford did enter into an agreement to loan Marathon

$554,314 without interest and with a reservation of rights to enable Marathon to complete United Riggers' portion of the project.

United Riggers subsequently filed suit against Marathon for breach of contract. Marathon counterclaimed against United Riggers and added Hartford as a third party defendant. Hartford responded by claiming it was entitled to indemnity from United Riggers in the event that Marathon recovered from Hartford. The jury found that United Riggers had not defaulted on its subcontract before being terminated, that United Riggers did not perform its work negligently, and that United Riggers had not been overpaid for the work it had performed. The jury also found that there had been no material modifications of the contract between Marathon and United Riggers that would entitle Hartford to be released from its obligations as surety. Because United Riggers was not liable to Marathon, Hartford, of course, suffered no loss on the bond.

Hartford then sought reimbursement from United Riggers for the attorney's fees and other costs Hartford had incurred by hiring its own attorney to present its case. The district court concluded that Hartford's decision to decline United Riggers' offer to defend Hartford in the case and instead to hire its own attorney was unjustified because United Riggers could have adequately protected Hartford's interests. The court also held that Hartford was not entitled to reimbursement because Hartford had not fulfilled its duty to request that United Riggers provide it with a defense. Hartford appeals from that decision.

In seeking reimbursement, Hartford relies on sections V and VII of the indemnity agreement between Hartford and United Riggers. Section V provides:

"The Indemnitors will indemnify the Surety against any and all liability, losses and expenses of whatsoever kind or nature (including but not limited to interest, court costs and counsel fees) which the Surety may sustain or incur (1) by reason of having executed any Bond issued hereunder, (2) by reason of the failure of the

Principal or any of the other Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) in enforcing any of the covenants and conditions of this Agreement. The Indemnitors will pay the Surety for all such losses or expenses as soon as liability therefor is asserted or exists, whether or not the Surety has made payment. Such payment shall be equal to the amount of the reserve set by the Surety; provided that in the case of any claim, demand or suit upon any of the Bonds, the Indemnitors may, subject to the provisions of Section VII, request the Surety to litigate or defend the matter."

Section VII provides:

"The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon any of the Bonds, unless the Indemnitors (1) shall request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and (2) shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any judgment rendered or that may be rendered, with interest, costs, expenses and counsel fees, including those of the Surety."

The parties agree that the law of California—the state in which the contract of indemnity was made—applies to this case. *See generally Hall v. Chrysler Corp.,* 526 F.2d 350, 352 (5th Cir.1976). California law is clear that while an indemnitee is free to conduct its own defense, "absent some contractual privilege so to do or some showing of sufficient justification or need therefor, an indemnitee ordinarily may not refuse to join in or cooperate with the indemnitor's proffered defense and still recover his separate and redundant attorneys' fees and costs." *Buchalter v. Levin,* 252 Cal. App.2d 367, 60 Cal.Rptr. 369, 371 (1967); *accord Goodman v. Severin,* 274 Cal.App.2d 885, 79 Cal.Rptr. 555, 562 (1969). In the instant case the district court found that Hartford was not justified in conducting a separate defense. We disagree.

Hartford had two defenses to liability to Marathon. The first was that Hartford was not liable as surety for United Riggers because United Riggers had not defaulted on its subcontract. Assuming its continued financial solvency, United Riggers probably was capable of providing this defense. However, Hartford had reason to doubt United Riggers' ability to satisfy a judgment and perhaps even its ability to remain solvent until the completion of the litigation. Hartford had requested collateral for its potential liability from United Riggers pursuant to section V of the indemnity agreement, but United Riggers was unable to supply that collateral. The reasons Marathon gave for terminating United Riggers' subcontract included United Riggers' failure to pay laborers and suppliers and its questionable financial ability to perform. Hartford was faced with liability of almost $1,000,000 on its performance bond if United Riggers was found in default and could not satisfy its obligation. These circumstances alone justified Hartford's hiring separate counsel to defend itself. The district court's factual findings to the contrary are clearly erroneous.

Hartford's second defense was that Hartford had been released from liability under the performance bond because Marathon and United Riggers materially altered their contract without Hartford's consent. The defense of material modification was adverse to United Riggers' interests because United Riggers would be left without the performance bond to pay its liability to Marathon if Hartford succeeded on that theory. The existence of separate defenses is sufficient justification for the decision of a surety to hire its own legal counsel, see *Buchalter v. Levin*, 60 Cal.Rptr. at 372; *Safeway Stores, Inc. v. Massachusetts Bonding & Insurance Co.*, 202 Cal.App.2d 99, 20 Cal.Rptr. 820, 829 (1962), but only if the decision is made in good faith. See generally *Jackson v. Hollowell*, 685 F.2d 961, 965, 966 & n. 15 (5th Cir.1982) (applying Mississippi law). United Riggers questioned Hartford's good faith because Hartford had received independent appraisals from two sources who concluded that Unit-

ed Riggers was not in default under its contract with Marathon. Although the appellate record is less complete than we would like, it appears that evidence at trial showed that changes had been made in the contract relating to time of performance and payments without Hartford's consent. The issue of material alteration went to the jury. Although the jury ultimately found for United Riggers, we must view the situation from the outset of the litigation. In the trial court's order denying posttrial motions, the judge stated that he would not have reached the same conclusion the jury did but that he would not find the evidence insufficient to support the jury's verdict. Apparently the judge was referring to the basic liability between Marathon and United Riggers, but his statement indicates this was a difficult case and supports the reasonableness of Hartford's decision to defend itself separately.

The district court also erred in holding that Hartford's failure to request that United Riggers provide it with a defense precludes Hartford's recovery. We believe the court erroneously relied upon *Gribaldo, Jacobs, Jones and Associates v. Agrippina Versicherunges A.G.*, 3 Cal.3d 434, 476 P.2d 406, 91 Cal.Rptr. 6 (1970). That case involved an errors and omissions policy issued by an insurance company to a firm of engineers. The court found that the policy indemnified against loss, not liability, and the court refused to require the insurer to pay attorney's fees incurred by the engineers when, acting on their own, they settled a claim for less than the $2500 policy deductible. As an alternative ground the court held for the insurance company because the engineers did not obtain the insurer's consent to the expenditures nor did they request the insurer to provide a defense. The court stressed that the policy expressly prohibited the engineers from incurring defense costs without the consent of the insurer and that the insurer was given control over the defense of suits. Therefore, the engineers (the indemnitees) could take over the defense and incur costs only if the in-

surer (the indemnitor) refused to provide a defense.

The present case differs considerably from *Gribaldo.* The agreement here gave Hartford (the indemnitee), not United Riggers (the indemnitor), general control over the defense of suits unless United Riggers fulfilled the conditions of section VII of the indemnity agreement, which it did not. In addition, the indemnity contract did not preclude Hartford from incurring the costs of defense. Rather, it expressly provided that the costs of defense incurred by Hartford were reimbursable by United Riggers and the other indemnitors. Because Hartford had good reasons for declining United Riggers' offer of a defense, requiring Hartford to request such a defense would be nonsensical. We hold that Hartford's failure to request a defense from United Riggers does not preclude its recovery.

The district court also held that Hartford was not entitled to reimbursement for its costs for defense, reasoning that Hartford had not provided an intelligent basis for distinguishing between the fees it incurred in the action against it on the surety bond and the fees it incurred in defending its own interests. *See Byron Jackson Co. v. Woods,* 41 Cal.App.2d 777, 107 P.2d 639, 643 (1940). This Court is not convinced that the fees Hartford incurred to recover the loan to Marathon are any less worthy of reimbursement than the fees it incurred to deny liability. In each case Hartford's controlling motive was to reduce its potential liability on the bond and hence to lower the amount it would have to recover from United Riggers and the other indemnitors.

The indemnity agreement between United Riggers and Hartford provided that the costs of defense incurred by Hartford were reimbursable. United Riggers has not shown any reason why Hartford is not entitled to at least some of those fees. Hartford is also entitled to reimbursement for fees and costs incurred in this appeal. *See Fidelity and Deposit Co. v. Whitson,* 187 Cal.App.2d 751, 10 Cal.Rptr. 6, 11–12 (1960).

Although we have concluded that Hartford was justified in hiring its own counsel,

an issue remains regarding the amount of attorney's fees, an issue that the trial court was not required to address. We agree with the concurring judge in *Jackson v. Hollowell,* who wrote:

"The substantial question in cases of this kind ... is not the bonding company's retention of its own separate counsel, but rather whether it was reasonable and necessary that *everything* done by such counsel have been performed by the bonding company's separate counsel, as opposed to having been performed by the principal's counsel for both the principal and the bonding company. In other words, the real issue is not whether the bonding company should have *any* services by separate counsel, but rather the *nature* and *extent* of services which it is reasonable and necessary that the bonding company call on its separate counsel for, in light of the fact that the principal's counsel is available to carry 'the laboring oar' for both."

685 F.2d at 969–70 (Garwood, J., concurring) (emphasis in original). We therefore remand the case to the district court to determine the amount of attorney's fees reasonably expended by Hartford.

REVERSED AND REMANDED for proceedings consistent with this opinion.