[No. H030054. Sixth Dist. Apr. 23, 2007.]

CITY OF WATSONVILLE, Cross-complainant and Appellant, v.
PATRICK T. CORRIGAN et al., Cross-defendants and Respondents.

**COUNSEL**

Grunsky, Ebey, Farrar & Howell, Frederick H. Ebey and Leslie J. Karst for Cross-complainant and Appellant.

Newman, Marcus & Clarenbach and Edward W. Newman for Cross-defendants and Respondents Patrick T. Corrigan and Jill A. Corrigan.

Law Offices of John H. McSpadden and John H. McSpadden for Cross-defendants and Respondents.

OPINION

ELIA, J.—This appeal arises out of a cross-action by the City of Watsonville (City) against respondents Patrick T. and Jill Corrigan and Michael Tansy, who were partners in developing and marketing residential properties in Watsonville. The trial court ruled that respondents had no duty to reimburse the City for the costs and fees it had incurred in defending the underlying action, because the City had failed to tender its defense to respondents. On appeal, the City contends that tender was not a prerequisite for reimbursement under the parties' indemnity agreement, under statutory and case law, and under the circumstances presented in this case. We agree that the contract, construed in accordance with Civil Code section 2778, did not require tender, and we therefore must reverse the judgment.

*Background*[1]

In early 2003 and 2004 three sets of plaintiffs sued multiple defendants, including respondents and the City, for damages related to soil instability and landslides on the property they had bought from respondents or other defendants. The causes of action against the City contained allegations of negligent maintenance of its property, nuisance, and inverse condemnation. The City cross-complained against respondents, among others, seeking declaratory relief and damages for breach of contract and failure to maintain the property. The City's specific allegations against respondents consisted of contractual indemnity for the City's defense costs and any judgment that might result. The City further alleged breach of an agreement by respondents and other cross-defendants to have the City named as an insured in their liability and property damage policies.

These cases were consolidated for trial, and eventually the plaintiffs arrived at a settlement with the City and respondents. The court ordered that all claims for indemnity or contribution be dismissed, except for those seeking express indemnity. On January 6, 2006, by stipulation, the indemnification issues between the City and respondents were bifurcated for trial.

---

[1] The "Statement of Facts and Case" in the City's brief contains no references to evidence in the record where its assertions of fact may be found. Instead, with few exceptions it cites the parties' trial briefs where the same assertions are found. "It is not the duty of a reviewing court to search the record for evidence on a point raised by a party whose brief makes no reference to the pages where the evidence can be found." (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1011 [113 Cal.Rptr.2d 625].) Indeed, the Appellant's appendix supplied by the City does not contain most of the necessary supporting evidence. At trial Tansy's and the Corrigans' attorneys rejected as too broad the City's proposed stipulation that all facts referred to in the briefs be deemed "true and proven." The City's consistent violation of California Rules of Court, former rule 14(a)(1)(C) (now rule 8.204) justifies this court in disregarding the City's statement of facts and in disallowing the City's costs on appeal.

At the trial on February 23, 2006, the City sought to recover $117,500, the amount of the settlement that Farmers Insurance had paid to plaintiffs on the City's behalf.[2] The City also claimed the costs and attorney fees it had incurred in defending the lawsuits.[3] Respondents argued that the City had suffered no damages and lacked standing even to raise the issue of reimbursement, as it had made no settlement payment to plaintiffs. As to attorney fees, respondents maintained that Civil Code section 2778, subdivision 4, obligated them to defend the City if asked, but if no request was made, then the City could "conduct its own defense at its own expense" and recover only whatever it had paid "by way of settlement or judgment."

The superior court ruled that the City had a duty to request a defense under the "duty to defend provision of the indemnification agreement." Having made a "conscious decision" not to use Tansy's or the Corrigans' counsel, the City was not then entitled to "pass the [defense] bill on to the indemnitors." The court also determined (apparently adopting the rationale advanced by respondents) that the $117,500 paid to plaintiffs by Farmers Insurance was not recoverable. In the ensuing judgment, the court concluded that respondents owed nothing to the City and dismissed the City's cross-complaint against respondents.

The City urges reversal of the judgment on multiple grounds. We need address only the first, as it is dispositive of the appeal.

### Discussion

The City's primary argument is that the parties' indemnity agreement, construed in accordance with Civil Code section 2778[4] and applicable case law, did not require the City to "tender its defense or otherwise give notice of the claim" to respondents in order for them to be accountable for the costs of the City's defense. "Rather, the only effect the failure to tender has on the [City's] indemnity claim is that it affects the burden of proof on the issue."

■ Section 2778 sets forth rules that guide the construction of contracts of indemnity. These rules "are as much a part of [an indemnity agreement] as those set out therein, unless a contrary intention appears." (*Gribaldo, Jacobs,*

---

[2] According to the parties, the City was named as an additional insured on a 1992 liability policy obtained by Kephart Construction, one of the previous owners and builders of the project. Farmers Insurance paid plaintiffs $235,000, of which $117,500 was attributed to the City.

[3] According to respondents, those costs and fees amounted to a claim of more than $230,000.

[4] Except as otherwise indicated, all further statutory references are to Civil Code section 2778, and unspecified references to individual subdivisions are to that section.

*Jones & Associates v. Agrippina Versicherunges A. G.* (1970) 3 Cal.3d 434, 442 [91 Cal.Rptr. 6, 476 P.2d 406] (*Gribaldo*); see also *Goodman v. Severin* (1969) 274 Cal.App.2d 885, 897 [79 Cal.Rptr. 555] [indemnitee may not recover the expenses of his defense "unless the agreement so provides or unless there is pleading and proof which brings the claim therefor within the provisions of subdivision 4, section 2778"].) If, however, the agreement indicates a "contrary intention" of the parties, the interpretive rules in section 2778 are not controlling on that point.

As relevant here, the statute provides: "1. Upon an indemnity against liability, expressly, or in other equivalent terms, the person indemnified is entitled to recover upon becoming liable; [¶] 2. Upon an indemnity against claims, or demands, or damages, or costs, expressly, or in other equivalent terms, the person indemnified is not entitled to recover without payment thereof; [¶] 3. An indemnity against claims, or demands, or liability, expressly, or in other equivalent terms, embraces the costs of defense against such claims, demands, or liability incurred in good faith, and in the exercise of a reasonable discretion; [¶] 4. The person indemnifying is bound, on request of the person indemnified, to defend actions or proceedings brought against the latter in respect to the matters embraced by the indemnity, but the person indemnified has the right to conduct such defenses, if he chooses to do so; [¶] 5. If, after request, the person indemnifying neglects to defend the person indemnified, a recovery against the latter suffered by him in good faith, is conclusive in his favor against the former; [¶] 6. If the person indemnifying, whether he is a principal or a surety in the agreement, has not reasonable notice of the action or proceeding against the person indemnified, or is not allowed to control its defense, judgment against the latter is only presumptive evidence against the former . . . ." (§ 2778.)

At issue here are two agreements describing the improvement projects to be performed by respondents. The first, executed in July 1994 between Patrick Corrigan and the City, required Corrigan, as developer, to hold the City harmless from any claims for damage resulting from the project operations. It further stated that Corrigan "shall defend" the City from any lawsuits based on such claims.[5] The 1997 agreement between the City and

---

[5] This agreement contained the following language: "Developer shall hold City, its elective and appointive boards, commissions, officers, agents and employees, harmless from any liability or damage or claims for damage for personal injury, including death, as well as from claims for property damage which may arise from Developer or Developer's contractors, subcontractors, agents or employees' operations under this Agreement, whether such operations be by Developer or by any of Developer's contractors, or by any one or more persons directly or indirectly employed by or acting as agent for Developer or any of Developer's contractors or subcontractors. Developer shall defend City and its elective and appointive boards, commissions, officers, agents and employees from any suits or actions at law or inequity for damages caused, or alleged to have been caused, by reason of any of the aforesaid

both Patrick Corrigan and Michael Tansy (collectively called "Developer") similarly stated that "Developer shall defend, indemnify and hold City . . . harmless" from damage claims and "shall defend" the City from lawsuits arising from project operations.

The City contends that the "plain language" of these two agreements, "construed as they must be under the rules of interpretation set forth in Civil Code § 2778, as well as the case law regarding interpretation of such agreements, establish[es] that there was no need" for the City to tender its defense to respondents for reimbursement to be required. The City points out that the indemnity language is "very simple and does not state anything to the contrary to § 2778." The City therefore concludes—and we agree—that section 2778 is applicable without any contractual modification.

In his trial briefs Tansy agreed with the City that nothing in the agreements indicated an intention contrary to section 2778, subdivision 4. Tansy faulted the City for failing to distinguish between the duty to indemnify and the duty to defend. In Tansy's view, the City was free to conduct its own defense, in accordance with subdivision 4, but if it chose to do that, it was then obligated to bear the cost. Corrigan argued that the same rules should be applied in this case as in insurance cases, where "the duty to defend commences upon tender of the defense." He relied on *Gribaldo, supra,* 3 Cal.3d 434 in asserting that section 2778, subdivision 4, "prohibits a party from recovering defense costs without first requesting that the other party furnish a defense."

█ On appeal, respondents adhere to the position that *Gribaldo,* together with general principles applicable in insurance contexts, compels a construction of section 2778 to allow defense costs to an indemnitee only after he or she first requests a defense. We cannot agree. Indemnity agreements are not construed like liability insurance policies. The liability insurer receives a premium for protecting its insured "against damage or liability from generally defined risks." (*Heppler v. J.M. Peters Co.* (1999) 73 Cal.App.4th 1265, 1282 [87 Cal.Rptr.2d 497].) The insurer owes a broad duty to defend its insured after tender, even when there is only a potential for indemnity, and even where no damages are ultimately awarded in the underlying action. (*Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1081 [17 Cal.Rptr.2d 210,

operations; provided as follows: [¶] (a) That City does not and shall not waive any rights against Developer which it may have by reason of the hold harmless agreement, because of the acceptance by City or the deposit with City by Developer, or any of the insurance policies described herein. [¶] (b) That the hold harmless agreement by Developer shall apply to all damages of every kind suffered, or alleged to have been suffered, by reason of any of the aforesaid operations refer[r]ed to in this paragraph, regardless of whether or not the City has prepared, supplied or approved plans and/or specifications for the project, or regardless of whether or not such insurance policies shall have been determined to be applicable to any of such damages or claims for damage."

846 P.2d 792].) And unlike insurance policies, which are adhesion contracts, there is normally no reason to construe indemnity agreements against the drafter. (*Goldman v. Ecco-Phoenix Elec. Corp.* (1964) 62 Cal.2d 40, 49 [41 Cal.Rptr. 73, 396 P.2d 377]; *Regan Roofing Co. v. Superior Court* (1994) 24 Cal.App.4th 425, 436 [29 Cal.Rptr.2d 413].) Instead, "parties to an indemnity contract have great freedom of action in allocating risk, subject to certain limitations of public policy. (See, e.g., Civ. Code, § 2782 [construction contracts cannot provide for indemnification for injury caused solely by indemnitee's negligent or willful conduct].)" (*Heppler v. J.M. Peters Co., supra,* 73 Cal.App.4th at p. 1277.) Whether respondents were obligated to indemnify the City depends on the intent expressed in their contracts, supplemented by the interpretive rules set forth in section 2778, not on principles laid down in general insurance contexts.

Subdivision 3 of section 2778 states that an indemnity against claims includes the costs of defense against those claims where they are incurred in good faith and in the exercise of reasonable discretion. This rule of interpretation applies to the contractual relationship between respondents and the City unless a contrary intention appears from the language of their indemnity agreements. As we have already observed, however, no such contrary intention appears in the agreements before us, as they are silent with respect to the costs of defense.[6]

█  Respondents maintain that subdivision 4 of section 2778 "does not provide that the indemnitee can choose to conduct its own defense and require the indemnitor to provide reimbursement." Instead, they argue, the indemnitee "must first request that the indemnitor provide the defense." Respondents read too much into the statute, however. Subdivision 4 describes the indemnitor's duty to *defend,* not the duty of indemnification. It requires the indemnitor to *defend* actions or proceedings brought against the indemnitee if the latter requests the defense. It also makes it clear that the indemnitee has the right to conduct its own defense if it so chooses. Nothing in this provision obligates the indemnitee to tender defense to the indemnitor; and the election to conduct its own defense (for any reason) does not supplant the interpretive rule in subdivision 3 that indemnification "embraces" the costs of the indemnitee's defense. Thus, subdivision 4 does not bear upon the question of reimbursement, but only addresses the *undertaking* of the defense of the action against the indemnitee. ·

Subdivision 5 also does not inform the outcome in this case. This provision merely states that a recovery against the indemnitee is "conclusive evidence"

---

[6] Indeed, the 1994 agreement between the City and Patrick Corrigan does not even mention indemnification, but only requires Corrigan to hold the City harmless from—and defend the City against—claims arising from his work on the improvement project.

against the indemnitor if the indemnitor has failed to defend the indemnitee upon the latter's request. We agree with the City that this provision is inapposite. Subdivision 6, which pertains to the indemnitee's failure to give the indemnitor notice of the action or to allow the indemnitor to control the defense, likewise is not directly relevant to the issue presented here.

■ The cases discussed by the parties are not particularly helpful. Of some guidance is *Eva v. Andersen* (1913) 166 Cal. 420 [137 P. 16], which the City cites for the proposition that tender is not invariably necessary to recover defense costs. In that case the plaintiff alleged that the defendant, in violation of a written agreement, had failed to indemnify him upon his becoming liable as a stockholder for a corporate debt. Among the defendant's grounds for demurrer was the assertion that "as there is no allegation of a suit and an opportunity on the part of the indemnitor to defend, he is entitled to regard the payment made by Eva as being merely voluntary." (*Id.* at pp. 424–425.) The Supreme Court responded, "notice is not necessary in such a case as this and much less is it necessary that the indemnifier be given an opportunity to defend any suit. While subdivision 4 of section 2778 of the Civil Code specifies that notice may be given to the person indemnifying, it does not make such notice compulsory. The two following subdivisions of that section merely declare rules of evidence under which a judgment recovered against the person indemnified may become *prima facie* or conclusive evidence of liability in his action against the person indemnifying. 'The omission to give notice to the indemnitor does not go to the right of action against him but simply changes the burden of proof and imposes upon the indemnitee the necessity of again litigating and establishing all of the actionable facts.' " (*Id.* at p. 425; cf. *Sunset-Sternau Food Co. v. Bonzi* (1964) 60 Cal.2d 834 [36 Cal.Rptr. 741, 389 P.2d 133] [under subdivision 6, agent's failure to notify principal of action does not waive reimbursement of defense costs but "merely requires" proof by agent that the defense was reasonable].)

*Fidelity Mortgage Trustee Service, Inc. v. Ridgegate East Homeowners Assn.* (1994) 27 Cal.App.4th 503 [32 Cal.Rptr.2d 521], also cited by the City, involved implied indemnity, not an express indemnity agreement. The appellate court applied agency principles, including the rule that the principal should indemnify the agent for the expenses (including attorney fees) for successfully defending an action against the agent. (*Id.* at pp. 510–511, quoting Rest.2d Agency, §§ 438, 439, com. a, p. 324.) In those procedural circumstances the court held that an agent need not have tendered its defense to the principal "as an absolute prerequisite to indemnification." (*Id.* at p. 511, citing *Sunset-Sternau Food Co. v. Bonzi, supra,* 60 Cal.2d at p. 844.) If no notification and tender were made, however, the agent may recover the amount paid on the claim only if the defense was reasonable. (*Ibid.,* quoting Rest.2d Agency, § 438, com. e, p. 326.)

In *City of Chino v. Jackson* (2002) 97 Cal.App.4th 377, 384–385 [118 Cal.Rptr.2d 349], also cited by the City, it was unnecessary to resort to the interpretive rules of section 2778, as an unambiguous agreement expressly provided for indemnification of attorney fees incurred by a surety. The agreement did not require any particular form of demand on the indemnitor, but "merely provide[d] that the filing of a lawsuit against a principal is a default, and that upon such default the surety [indemnitee] may file suit to enforce the indemnity agreement." (*City of Chino*, at p. 385.) *Hillman v. Leland E. Burns, Inc.* (1989) 209 Cal.App.3d 860, 866 [257 Cal.Rptr. 535] also involved unambiguous contract language which expressly required a contractor to reimburse the indemnitee architect for the latter's attorney fees unless he was himself negligent. The appellate court noted, however, that its construction of the agreement was consistent with section 2778, subdivision 3. The issue of tender did not arise.

Respondents, on the other hand, place undue reliance on *Gribaldo, supra*, 3 Cal.3d 434. There the Supreme Court faulted the plaintiff insureds for claiming defense expenditures without first obtaining the insurers' consent or requesting a defense: "Even if we assume, *arguendo*, that the policy failed to exclude the duty to defend arising under subdivision 4 of section 2778, the record shows that plaintiffs voluntarily incurred defense costs without first obtaining defendants' consent thereto (as required by Condition '2' of the policy), and without first requesting defendants to furnish a defense (as required by section 2778, subdivision 4)." (*Id.* at pp. 448–449.)

Whether or not the quoted language was dictum as the City maintains, the City correctly points out that in *Gribaldo* the contract language specifically required the plaintiffs to obtain the defendants' consent and give them the opportunity to conduct the defense before the plaintiffs incurred defense costs.[7] Because the insured ignored this clear prerequisite, the insured was not entitled to recover the costs of conducting its own defense. Even if we disregard the procedural distinction that *Gribaldo* involved an insurer/insured relationship, we cannot overlook the absence of a consent condition in the indemnity agreements before us.

*Buchalter v. Levin* (1967) 252 Cal.App.2d 367 [60 Cal.Rptr. 369] is also distinguishable. The key fact in that case was the indemnitor's offer of a defense. When the indemnitees rejected the offer, the appellate court applied subdivision 4 of section 2778 to preclude recovery of their attorney fees and costs. (*Id.* at p. 371; see also *Goodman v. Severin, supra*, 274 Cal.App.2d at

---

[7] The consent condition stated that "[t]he Assured shall not admit liability for or settle any claim or incur any costs or expenses in connection therewith without the written consent of the Underwriters, who shall be entitled at any time to take over and conduct in the name of the Assured the defense of any claim." (*Gribaldo, supra*, 3 Cal.3d at p. 441.)

p. 897 [indemnitee may not recover defense costs unless agreement so provides or section 2778, subdivision 4, applies to claim].) Also significant in *Buchalter* was the contracting parties' express mutual understanding that the indemnitor would assume the defense because the indemnitees wished to avoid the expense and burden of an anticipated lawsuit and would not agree to purchase the subject real property absent the agreement containing the indemnification condition.[8] In that light, it was proper for the trial judge to construe the parties' agreement to limit the indemnitor's obligation to the undertaking of the defense and payment of the judgment, while excluding reimbursement of defense costs resulting from the indemnitees' decision to hire separate counsel. In addition, the *Buchalter* court was not presented with the question of whether subdivision 4 requires the indemnitee to request a defense in the absence of an offer. We decline to extend the *Buchalter* holding to such a contingency.

Respondents also rely on *United States Elevator Corp. v. Pacific Investment Co.* (1994) 30 Cal.App.4th 122 [35 Cal.Rptr.2d 382]. There the owner promised to indemnify the elevator service company "against all claims, demands, and liability" arising out of the use of the elevator. (*Id.* at p. 124.) The indemnitee tendered its defense, but the owner refused, and the indemnitee thereafter sought its defense costs and attorney fees. The trial court and appellate court observed that the parties' contract did not expressly include indemnification of defense costs and fees. Nevertheless, section 2778, subdivision 4, required the defendant to defend the elevator company or pay its defense costs. The court did not conversely suggest, however, that if the indemnitee had *not* tendered its defense, then it would not be permitted to recover its costs and fees under section 2778.

■ We thus can find no statutory, contractual, or judicial impediment to reimbursement of the City's defense costs.[9] This does not mean, of course, that the City is necessarily entitled to recover all of the costs and fees it has claimed. Section 2778, subdivision 3, allows only those defense costs that were "incurred in good faith, and in the exercise of a reasonable discretion."

---

[8] The relevant portions of the indemnity agreement in *Buchalter* stated: "WHEREAS, [indemnitees] feel that if [the third-party real estate brokers] institute suit for a commission due to [indemnitees'] purchase, that [indemnitees] may become involved in said litigation in some manner, and [¶] . . . [indemnitees] have no desire to become involved in said litigation . . . [¶] . . . . [¶] . . . [Indemnitor] hereby covenants and agrees to indemnify and hold harmless [indemnitees] and their wives and each of them from any and all liability, loss, costs, judgments, court costs, interest, and attorneys fees that may be incurred by or rendered against [indemnitees], or any of them, as a result of [the third-party real estate brokers] or their agents or assigns instituting suit against [indemnitees] and their wives or any of them for any reason whatsoever arising from [indemnitees] and their respective spouses purchasing the aforementioned property.' " (*Buchalter v. Levin, supra,* 252 Cal.App.2d at p. 370.)

[9] In light of this conclusion, it is unnecessary to address the City's contentions regarding conflict of interest, constructive tender, and lack of prejudice.

The trial court did not reach the issues of good faith and reasonableness, since it found the lack of tender to invalidate the entire claim. Upon remand, the court will have an opportunity to hear evidence on the justification for the fees and costs incurred by the City and determine the amount it is entitled to recover.

### Disposition

The judgment is reversed. The matter is remanded for a determination of any unresolved issues in the underlying cross-action. The parties shall bear their own costs in this appeal.

Rushing, P. J., and Premo, J., concurred.

A petition for a rehearing was denied May 18, 2007, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied July 25, 2007, S153105. Werdegar, J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.